# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GEORGANN L. FLORA,

                Plaintiff

    v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security

                Defendant

CIVIL ACTION NO. 1:16-CV-00252

(CONNER, C.J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. §405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Georgann L. Flora's ("Mrs. Flora's") claim for disability insurance benefits under Title II of the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommended disposition, pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, the Court recommends that the Commissioner's final decision be **AFFIRMED**, and Mrs. Flora's requests for relief be **DENIED**.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. §405(g), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in place of the former Commissioner of Social Security.

## I. PROCEDURAL HISTORY

Mrs. Flora testified that she was let go from her position as a micro-electronics assembler in October 2010 as a result of frequent absences due to migraine headaches. (Admin. Tr. 34; Doc. 10-2 p. 35). On August 30, 2012, Mrs. Flora protectively filed an application for disability insurance benefits under Title II of the Social Security Act. In her application, Mrs. Flora alleged that she was unable to work due to the following conditions: migraine headaches, severe back pain, and depression (secondary to pain). (Admin. Tr. 187; Doc. 10-6 p. 40); (Admin. Tr. 207; Doc. 10-6 p. 60). She alleged that these conditions because "disabling" as of her last day of work, but amended her alleged onset date to December 1, 2010, the earliest date that her earnings fell below the level of substantial gainful activity. (Admin. Tr. 33-34; Doc. 10-2 pp. 34-35).

On October 5, 2012, Mrs. Flora's claim was denied at the initial level of administrative review. During the initial evaluation of her claim, a State agency psychologist assessed that Mrs. Flora's alleged mental impairment was not severe because it did not result in any significant limitations. Ultimately, a non-medical single decisionmaker denied Mrs. Flora's claim based on a finding that Mrs. Flora could engage in light work that did not preclude the performance of her past relevant work as actually performed. (Admin. Tr. 78-87; Doc. 10-3 pp. 2-11).

On November 25, 2012, Mrs. Flora requested an administrative hearing. Her request was granted, and on March 24, 2014, Mrs. Flora appeared and testified during an administrative hearing before Administrative Law Judge Sharon Zanotto ("ALJ"). Mrs. Flora

was represented by counsel throughout the proceedings. Impartial vocational expert Brian Bierley ("VE Bierley") also appeared and testified.

On April 8, 2014, the ALJ issued a written decision denying Mrs. Flora's application for benefits. The ALJ concluded that Mrs. Flora's medically determinable impairments did not preclude the performance of a range of light work, and did not prevent her from returning to her past work as a housekeeper, file clerk, or micro-electronics assembler. (Admin Tr. 18; Doc. 10-2 p. 19).

On June 6, 2014, Mrs. Flora requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") correct alleged errors made by the ALJ. (Admin. Tr. 9; Doc. 10-2 p. 9). On December 18, 2015, the Appeals Council denied Mrs. Flora's request for review. (Admin. Tr. 1-4; Doc. 10-2 pp. 2-5). This makes the ALJ's April 2014 decision, the final decision subject to judicial review by this Court.

On February 11, 2016, Mrs. Flora initiated this action by filing a complaint. (Doc. 1). In her complaint, Mrs. Flora alleged that the final decision denying her claim is not supported by substantial evidence and is contrary to the law and regulations. (Doc. 1 ¶13). As relief she requests that this case be remanded to the Commissioner for a new administrative hearing, or in the alternative that she be awarded the benefits to which she believes she is entitled.

On June 9, 2016, the Commissioner filed her answer to Mrs. Flora's complaint. (Doc. 9). The Commissioner maintains that the ALJ's April 2014 decision denying Mrs. Flora's application for benefits is supported by substantial evidence and was made in accordance with the law and regulations. Together with her answer, the Commissioner filed a certified transcript of the administrative proceedings in this case. (Doc. 10).

This matter has been fully briefed by the parties and is ripe for decision. (Doc. 14); (Doc. 16); (Doc. 17).

## II.   STANDARD OF REVIEW

To receive benefits under Title II of the Social Security Act, the claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To satisfy this requirement, the claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant number in the national economy. 42 U.S.C. § 423(d)(2)(A). In addition, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating the question of whether a claimant is under a disability as it is defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether the claimant is able to do his or her past relevant work, considering his or her current

residual functional capacity ("RFC");[2] and, (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her current RFC, age, education, and work experience. 20 C.F.R. §404.1520(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing his or her past relevant work. 20 C.F.R. §404.1512(a)(effective Mar. 26, 2012, through June 11, 2014).[3] Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. §404.1512(f)(effective Mar. 12, 2012, through June 11, 2014).

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount

---

[2] A claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R. §404.1545(a)(1); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). Before the ALJ goes from step three to step four, he or she assesses the claimant's RFC. 20 C.F.R. §404.1520(a)(4). The RFC is used at step four and step five to evaluate the claimant's case. *Id.*

[3] The version of 20 C.F.R. §404.1512(effective Mar. 26, 2012 through June 11, 2014) in effect on the date the ALJ issued her decision in this case has been amended during the pendency of this action. Section (a) of this regulation, however, remains virtually identical, *see* 20 C.F.R. 404.1512(a)(Mar. 27, 2017), and section (f) has been redesignated as section (b)(3), *see* 20 C.F.R. §404.1512(b)(3)(effective Mar. 27, 2017). In this report, the Court cites to the version relied on by the ALJ when she evaluated Mrs. Flora's claim. The application of the new version of these provisions, however, would not affect the outcome in this case.

of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Mrs. Flora is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## III.  THE ALJ'S DECISION

In her decision denying Mrs. Flora's claim, the ALJ found that Mrs. Flora met the insured status requirement of Title II of the Social Security Act through December 31, 2015. (Admin. Tr. 14; Doc. 10-2 p. 15). As such, the period of time relevant to this case is from December 1, 2010, Mrs. Flora's alleged onset date, through April 8, 2014, the date the ALJ issued her decision. After making this determination, the ALJ assessed Mrs. Flora's claim at steps one through four of the sequential evaluation process.

At step one, the ALJ found that Mrs. Flora did not engage in substantial gainful activity during the relevant period. (Admin. Tr. 14; Doc. 10-2 p. 15). At step two, the ALJ found that the medical evidence of record established the existence of the following medically determinable severe impairments: lumbar degenerative disc disease, migraine headaches, and osteoporosis. (Admin. Tr. 14; Doc. 10-2 p. 15). At step three the ALJ found that Mrs. Flora did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in the version of 20 C.F.R. Part 404, Subpart P, Appendix 1 effective on the date of her decision. (Admin. Tr. 15; Doc. 10-2 p. 16).

Between steps three and four, the ALJ assessed Mrs. Flora's RFC. In doing so she evaluated the medical opinion evidence of record. The ALJ accorded "significant" weight on treatment notes from treating orthopedist Ronald Lippe ("Dr. Lippe"), treating source Ed S. Violago ("Dr. Violago"), and a medical source statement submitted by treating neurologist Jon Vickery ("Dr. Vickery"), but accorded "minimal" weight to a letter by primary care physician Michael A. DeMichele ("Dr. DeMichele").

On August 20, 2012, after reviewing an MRI and examining Mrs. Flora, Dr. Lippe noted that although Mrs. Flora had slight spondylolisthesis and mild spinal stenosis at L4-L5, along with degenerative disc disease, surgical intervention was not appropriate at that time. (Admin. Tr. 275; Doc. 10-9 p. 8).

On September 18, 2012, treating neurologist Dr. Vickery completed a medical source statement. (Admin. Tr. 284-285; Doc. 10-9 pp. 17-18). Dr. Vickery assessed that Mrs. Flora had no limitations in the activities of lifting, carrying, standing, walking, sitting, pushing, pulling, bending, kneeling, stooping, crouching, balancing climbing, reaching, handling, fingering, feeling, seeing hearing, speaking, tasting, or continence. He did assess, however, that Mrs. Flora should avoid exposure to fumes, odors, and gasses because they could trigger Mrs. Flora's migraines.

Between November 2012, and April 2013, Dr. Violago provided treatment for Mrs. Flora's back pain. (Admin. Tr. 340-358; Doc. 10-9 pp. 73-91). Although Mrs. Flora complained of significant pain, on examination Dr. Violago noted nothing more than occasional discomfort or tenderness during range of motion testing. In April 2013, Dr. Violago noted that Mrs. Flora was ambulatory without an assistive device, had normal functional mobility, a functional range of motion, and only mild tenderness over the sacroiliac joint. (Admin. Tr. 356; Doc. 10-9 p. 89).

In August 2013, Mrs. Flora had approximately seventy-five percent pain relief during a trial with a spinal cord stimulator. Dr. Dahl recommended a permanent implant and thoracic laminectomy (decompression surgery) at T10-T11. (Admin. Tr. 366; Doc. 10-9 p. 99). Mrs. Flora underwent this procedure in September 2013. No complications were noted, and Mrs. Flora's pain improved. At her hearing, however, Mrs. Flora testified that her permanent spinal

cord stimulator does not work to relieve any of her pain, so she rarely turns it on. (Admin. Tr. 64; Doc. 10-2 p. 65). This aspect of her testimony is not corroborated by any treatment records.

On November 15, 2013, Dr. DeMichele wrote a letter explaining that Mrs. Flora has had intractable back pain dating back to 2010. (Admin. Tr. 329; Doc. 10-9 p. 62). Dr. DeMichele explained that he examined Mrs. Flora in February, March, May, and August of 2013, and based on these examinations concluded that Mrs. Flora needed to be on chronic narcotics to keep her functional. Dr. DeMichele concluded that Mrs. Flora has been disabled due to her back pain. He does not, however, comment on Mrs. Flora's condition after the spinal implant and laminectomy performed in September 2013, and does not provide any assessment of Mrs. Flora's functional abilities.

The ALJ found that, during the relevant period, Mrs. Flora had the RFC to perform less than the full range of light work as defined in 20 C.F.R. §404.1567(b) in that she is capable of occasional stooping and must avoid moderate exposure to dust, fumes, odors, gases, and chemicals. (Admin. Tr. 15; Doc. 10-2 p. 16).

At step four, the ALJ found that the above RFC assessment would not prevent Mrs. Flora from returning to her past relevant work as a housekeeper, file clerk, and micro-electronics assembler. The ALJ relied on VE Bierley's testimony to support this determination. VE Bierley testified that Mrs. Flora's past relevant work (as actually and generally performer) could be classified as follows: housekeeper (unskilled, light work); file clerk (semi-skilled, light work); and micro-electronics assembler (semi-skilled, sedentary work). (Admin. Tr. 74; Doc. 10-2 p. 75). VE Bierley also testified that an individual with the RFC assessed by the ALJ could

engage in Mrs. Flora's past relevant work as a housekeeper, file clerk, or micro-electronics assembler. (Admin. Tr. 75; Doc. 10-2 p. 76).

IV. **ANALYSIS**

A. WHETHER THE ALJ ERRED AT STEP THREE OF THE SEQUENTIAL EVALUATION PROCESS WHEN SHE FOUND THAT MRS. FLORA DID NOT MEET LISTING 1.04C.

At step three of the sequential evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; *Burnett*, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); 20 C.F.R. §404.1520(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. *Id.*

Listing 1.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 deals with disorders of the spine that result in compromise of a nerve root or the spinal cord. To meet listing 1.04C, a claimant must have a "disorder of the spine" with "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate mentally acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate

effectively, as defined in 1.00B2b." 20 C.F.R. Part 404, Subpart P, Appendix 1 §1.04C (effective Feb. 26, 2014, through Dec. 8, 2014).[4]

Mrs. Flora argues that the ALJ erred because "medical treatment records indicated that Flora had difficulty ambulating as she was unable to walk without experiencing severe pain." (Doc. 14 p. 17). In support of her argument, Mrs. Flora relies on treatment notes where Ms. Flora reported that she had difficulty with mobility (Admin. Tr. 259; Doc. 10-8 p. 27), could only walk very short distances (Admin. Tr. 275; Doc. 10-9 p. 8), could not get around at times, (Admin. Tr. 277; Doc. 10-9 p. 10), and that walking makes her pain "unbearable," (Admin. Tr. 353; Doc. 10-9 p. 86). She also cites to one treatment note where a clinician observed that Ms. Flora walked with an antalgic gait. (Admin. Tr. 260; Doc. 10-8 p. 28).

As noted by the Commissioner, ineffective ambulation, for the purposes of listing 1.04C, is defined as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Part 404, Subpart P, Appendix 1 §1.00B2b(1)(effective Feb. 26, 2014, through Dec. 8, 2014). Examples include the inability to walk without the use of a walker, two crutches, or two canes. 20 C.F.R. Part 404, Subpart P, Appendix 1 §1.00B2b(2)(effective Feb. 26, 2014, through Dec. 8, 2014). Although Mrs. Flora reported that

---

[4] The listing of impairments has been revised many times since the date the ALJ issued her decision in this case. The version of listing 1.04C in the most recent iteration of the listing of impairments, however, is identical to the one in effect on the date the ALJ issued her decision, 20 C.F.R. Part 404, Subpart P, Appendix 1 §1.04C (effective Mar. 27, 2017), as is the definition for "ability to ambulate effectively" codified at 20 C.F.R. Part 404, Subpart P, Appendix 1 §1.04C(effective Mar. 27, 2017).

she experiences pain while walking and, aside from one treatment note indicating that Mrs. Flora used crutches after an ankle injury in April 2011 (*see* Admin. Tr. 251; Doc. 10-8 p. 19), she regularly ambulates without any assistive device, (*see* Admin. Tr. 356; Doc. 10-9 p. 89). Accordingly, the Court finds that the ALJ's determination that Ms. Flora did not meet all of the criteria of Listing 1.04C is supported by substantial evidence.

B. WHETHER THE ALJ'S RFC ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE

A claimant's RFC assessment is a reflection of the most a claimant can still do despite the limitations resulting from his or her medically determinable severe and non-severe impairments. 20 C.F.R. §404.1545. The ALJ uses his or her RFC assessment at the fourth step of the sequential evaluation process to determine whether a claimant can engage in his or her past relevant work. 20 C.F.R. §404.1520(e). Where an RFC assessment is incorrect, or in complete, it undermines the ALJ's conclusion at step four of the sequential evaluation process. *See* SSR 96-8p, 1996 WL 374184 at *4 (recognizing that the failure to make a function by function assessment at step four could result in the adjudicator overlooking some of an individual's restrictions and could lead to an erroneous finding that an individual is not disabled).

In this case, Mrs. Flora argues that the ALJ's RFC assessment fails to account for her credibly established limitations in the activities of standing, walking, and remembering, or the functional impact of her pain. (Doc. 14 pp. 22-27). She also asserts that her limitations are supported by the medical opinion of Dr. DeMichele, which she argues was improperly discounted. (Doc. 14 p. 18).

Mrs. Flora also argues that the ALJ failed to consider her alleged memory limitations resulting from her prescribed medication. (Doc. 14 p. 25). In support of her allegation Mrs. Flora relies on treatment notes from Dr. Vickery. These notes reflect that Mrs. Flora complained of memory loss, and to investigate her concerns Dr. Vickery ordered a battery of cognitive testing. (Admin. Tr. 429-430; Doc. 10-10 p. 59-60). Testing revealed that Mrs. Flora's memory was well within the normal range. (Admin. Tr. 433-434; Doc. 10-10 pp. 63-64).

### 1. Whether the ALJ properly discounted Dr. DeMichele's November 2013 letter.

In her decision, the ALJ accorded "minimal" weight to Dr. DeMichele's November 2013 letter. In doing so, the ALJ explained that "the ultimate findings as to the claimant's inability to work is an issue reserved to the Commissioner of Social Security and, further, it is not supported by the medical evidence of record. (Admin. Tr. 17; Doc. 10-2 p. 18). Mrs. Flora argues that substantial evidence does not support the ALJ's decision to discount Dr. DeMichele's letter. (Doc. 14 pp. 18-20). Mrs. Flora's argument is two-fold. First, she argues that the ALJ failed to meet her obligation to address Dr. DeMichele's opinion pursuant to SSR 96-5p. Second, she argues that the ALJ's decision to discount Dr. DeMichele's opinion is not supported by substantial evidence because the ALJ ignored relevant, probative evidence that is consistent with the opinion.

20 C.F.R. §404.1527(d) explains that a statement by a medical source that a claimant is disabled is an opinion on an issue reserved to the Commissioner. Such a statement are not entitled to any special significance under the Commissioner's regulations, but must not be ignored by the ALJ. 20 C.F.R. §404.1527(d)(3); SSR 96-5p, 1996 WL 374183 at *3. Mrs. Flora contends that the ALJ "ignored" Dr. DeMichele's opinion. The Court disagrees. The ALJ

summarized this opinion, and then discounted it. As such, the Court finds that the ALJ comported with her obligation under SSR 96-5p to recognize and weigh this opinion.

Next Mrs. Flora argues that the ALJ's decision to discount Dr. DeMichele's opinion that Mrs. Flora has been disabled by unremitting back pain since 2010 is not supported by substantial evidence. First, Mrs. Flora argues that the ALJ's decision is in error because the ALJ failed to consider evidence that supports Dr. DeMichele's opinion. In support of her argument, Mrs. Flora relies on treatment notes documenting the presence of spinal stenosis, neurogenic claudication (pain *caused* by spinal stenosis), a positive straight leg raise test on August 2013, diminished reflexes in her knees and ankles, diminished lower extremity motor strength secondary to pain, increased discomfort during range of motion testing, and one instance of antalgic gait (a limp that develops as a way to avoid pain) observed in a clinical setting in August 2012. The Court is not persuaded by Mrs. Flora's argument.

The ALJ expressly recognized the presence of spinal stenosis and neurogenic claudication, and the positive straight leg raise test in her written decision. Accordingly, the Court finds that Mrs. Flora's assertion that the ALJ erred by ignoring this evidence lacks merit.

The ALJ did not recognize diminished reflexes in her knees and ankles, diminished lower extremity motor strength secondary to pain, increased discomfort during range of motion testing, or the antalgic gait. However, "[t]here is no requirement that the ALJ discuss every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F.App'x 130, 133 (3d Cir. 2004). Although an ALJ may not reject pertinent or probative evidence without explanation, there is no authority that requires an ALJ to cite to all evidence that a claimant presents, including evidence that is irrelevant to the case. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir.

2008). Mrs. Flora argues that the ALJ erred by failing to make reference to this evidence, but does not explain how this evidence is pertinent or probative beyond the vague assertion that it supports Dr. DeMichele's medical opinion. While in some cases the probative value of a certain piece of medical evidence may be obvious, the clinical evidence relied on by Mrs. Flora in this instance is not. For example, Mrs. Flora accurately notes that there objective evidence of diminished reflexes in Mrs. Flora's knees and ankles, but the treatment notes do not explain the significance of this finding, the extent to which Mrs. Flora's reflexes are diminished, or the extent her diminished reflexes could be expected to impact her functional capacity. The same logic extends to the evidence of diminished lower extremity motor strength, and increased discomfort on range of motion testing. The treatment notes themselves are not sufficiently specific to allow any reasonable determination as to whether it supports or contradicts Dr. DeMichele's opinion. Last, with respect to the single episode of antalgic gait, it is also not probative in this case. Mrs. Flora was observed to walk with an antalgic gait on one occasion on August 8, 2012. (Admin. Tr. 259; Doc. 10-8 p. 27). As noted by the ALJ, however, Mrs. Flora was observed to walk normally on July 25, 2012, (Admin. Tr. 277; Doc. 10-9 p. 10), and had a normal gait on December 12, 2012. (Admin. Tr. 347; Doc. 10-9 p. 80). There is simply no evidence that Mrs. Flora's gait abnormality persisted, thus is of limited value in this case and is not a sufficient basis to disturb the ALJ's decision.

Last, as is clear in the ALJ's decision, Dr. DeMichele's opinion that Mrs. Flora has been disabled since 2010 is inconsistent with the opinion of Dr. Dr. Vickery. Furthermore, the ALJ reasonably concluded that Dr. Vickery's opinion was supported by and consistent with treatment notes from Mrs. Flora's other specialists. Accordingly, the Court finds that Mrs.

Flora's argument that the ALJ's decision to discount Dr. DeMichele's is not supported by substantial evidence lacks merit.

### 2. Whether the ALJ failed to properly account for credibly established limitations in the activities of standing and walking.

The Third Circuit has explained that:

> Our cases have established some guidelines as to when a limitation is credibly established, and the governing regulations have something to say on that score as well (see especially Regs. §§ 945, 929(c) and 927). Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response (*Burns*[*v. Barnhart,* 312 F.3d 113, 123(3d Cir. 2002)]). Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence (*Plummer*[*v. Apfel,* 186 F.3d 422, 429(3d Cir. 1999)]). Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but "cannot reject evidence for no reason or for the wrong reason" (a principle repeated in *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir.1993); Reg. § 929(c)(4)). Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it (Reg. § 929(c)(3)).

*Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). In this case, Mrs. Flora asserted that she could not walk more than one city block or thirty minutes, could not stand for more than thirty minutes at one time, and could not sit for more than thirty minutes at one time.[5] (Admin. Tr. 59; Doc. 10-2 p. 60); (Admin. Tr. 170; Doc. 10-6 p. 23). The Court agrees with Mrs. Flora

---

[5] Mrs. Flora also argues that, if she had properly been restricted to sedentary work, she would have been found disabled under the medical vocational rules codified at 20 C.F.R. Part 404, Subpart P, Appendix 2. (Doc. 14 p. 29). The Court finds that this argument lacks merit. There is no medical evidence suggesting that Mrs. Flora is limited to sedentary work.

that, if credited, these limitations are inconsistent with the performance of light work. However, the only medical source to provide a functional assessment opined that Mrs. Flora had no difficulty sitting, standing, or walking, and therefore directly conflicts with it. (Admin. Tr. 284; Doc. 10-9 p. 17). Furthermore, the ALJ properly accorded significant weight to this source's opinion. The Court finds no basis to disturb the ALJ's decision to discount Mrs. Flora's testimony about her standing, sitting, and walking limitations.

### 3. Whether the ALJ failed to properly account for credibly established memory limitations

Mrs. Flora argues that the ALJ failed to consider her alleged memory limitations. (Doc. 14 p. 25). In August 2013 Mrs. Flora complained of memory loss, and to investigate her concerns Dr. Vickery ordered a battery of cognitive tests. (Admin. Tr. 429-430; Doc. 10-10 p. 59-60). Testing revealed that Mrs. Flora's memory was well within the normal range. (Admin. Tr. 433-434; Doc. 10-10 pp. 63-64). Based on these test results, there is no evidence that the memory deficits complained of would result in any degree of functional limitation. Furthermore, the ALJ's decision is clear that she considered the result of this cognitive testing before choosing to exclude Mrs. Flora's alleged memory impairment from her RFC assessment. (*see* Admin. Tr. 17; Doc. 10-2 p. 18). As such, the Court finds no basis to disturb the ALJ's decision.

### 4. Whether the ALJ properly evaluated Mrs. Flora's subjective complaints of pain.

The Commissioner's regulations define "symptoms" as the claimant's own description of his or her impairment. 20 C.F.R. §404.1502. The ALJ is required to consider all symptoms alleged, and in cases where symptoms are not substantiated by objective medical evidence or

where conflicts in the evidence exist, assess the extent to which the claimant's description of his or her symptoms can be deemed credible. 20 C.F.R. §404.1529(a)(effective June 13, 2011 through Mar. 26, 2017).[6] In many cases this determination has a significant impact upon the outcome of a claimant's application, because the ALJ need only account for those symptoms – and the resulting limitations – that are credibly established when formulating his or her RFC assessment. *Rutherford*, 399 F.3d at 554.

The regulations describe a two-step process for evaluating symptoms. First, the ALJ must consider whether there is an underlying medically determinable impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptom alleged. 20 C.F.R. §404.1529(b)(effective June 13, 2011 through Mar. 26, 2017). If there is no medically determinable impairment that could reasonably produce the symptom alleged, then the symptom cannot be found to affect the claimant's ability to do basic work activities. *Id.*

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms which can be reasonably attributed to a medically determinable impairment. 20 C.F.R. §404.1529(c)(1)(effective June 13, 2011 through Mar. 26, 2017). Symptoms will be determined to reduce a claimant's functional capacity only to the extent that the alleged

_____

[6] This regulation has been amended since the Commissioner issued her final decision in this case. *See* 20 C.F.R. §404.1529(effective Mar. 17, 2017). A comparison of new and old version of this regulation reveals that there are few substantive changes. Both versions outline a two-step process to evaluate a claimant's subjective statements and identify the same factors to be considered in the ALJ's assessment of the intensity, persistence, and limiting effects of a claimant's symptoms. Because the ALJ decided this case under the old version, the Court cites to it here.

limitations and restrictions due to the symptom alleged can be reasonably be accepted as consistent with objective medical evidence and other evidence of record. 20 C.F.R. §404.1529(c)(4)(effective June 13, 2011 through Mar. 26, 2017). However, an ALJ will not reject symptoms about the intensity, persistence, or limiting effects of a symptom solely because it is not substantiated by objective evidence. 20 C.F.R. §404.1529(c)(3)(effective June 13, 2011 through Mar. 26, 2017). Furthermore, the ALJ need not totally accept or totally reject the claimant's statements, and may find all, some, or none, of the alleged symptoms are credible. SSR 96-7p, 1996 WL 374186 at *4.[7] The ALJ may also find that a claimant's allegations are not credible to a certain degree. *Id.*

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246, at *9(E.D. Pa. Mar. 7, 2000)(*quoting Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531(6th Cir. 1997)). However, an ALJ is not free to discount a claimant's statements about his or her symptoms or limitations for no reason or for the wrong reason. *Rutherford*, 399 F.3d at 554.

---

[7] SSR 96-7p, has since been superseded by SSR 16-3p. The new ruling eliminates the term "credibility" from the Social Security Administration's policy guidance in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029 at *1. A comparison of these rulings reveals that there are few substantive changes. Both rulings outline a two-step process to evaluate a claimant's subjective statements and identify the same factors to be considered in the ALJ's assessment of the intensity, persistence, and limiting effects of a claimant's symptoms. Because the ALJ and the parties cite to SSR 96-7p, the Court relies on this ruling as well. However, our analysis would not be different under the new ruling.

The Commissioner's regulations also provide a list of factors that the ALJ should consider when assessing the credibility of a claimant's allegations about his or her symptoms. These factors include: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; any factor that precipitates or aggravates the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; any treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; any measures the claimant uses or has used to relieve his or her pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and any other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §404.1529(c)(3)(effective June 13, 2011 through Mar. 26, 2017).

In her decision denying Mrs. Flora's application for benefits, the ALJ found that although Mrs. Flora's medically determinable impairments could reasonably be expected to cause the symptoms alleged, the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (Admin. Tr. 16; Doc. 10-2 p. 17). Mrs. Flora contends that the ALJ failed to provide "clear and convincing reasons" as to why she rejected Mrs. Flora's statements about her pain. (Doc. 14 p. 26). In support of her argument, Mrs. Flora relies on diagnostic imaging, an asserts that her severe pain should have been credited based on these diagnostic tests. The Court finds that this argument lacks merit. Although pain could reasonably result from the medical conditions established by the imaging studies cited by Mrs. Flora, she fails to provide evidence, or otherwise explain what functional

deficits are caused by her pain. Absent such allegations, this Court cannot determine whether any credibly established limitation was improperly excluded from the ALJ's RFC assessment.

C. WHETHER THE ALJ MADE THE REQUISITE FINDINGS OF FACT TO SUPPORT HER CONCLUSION AT STEP FOUR OF THE SEQUENTIAL EVALUATION PROCESS

Flora argues that the ALJ's decision at step four is erroneous as a matter of law because the ALJ failed to make the proper factual findings pursuant to SSR 82-62.

In order to determine whether a claimant can perform his or her past relevant work, the ALJ must make specific findings as to the "physical and mental demands of [the claimant's] past relevant work." *Burnett*, 220 F.3d at 125-126 (*citing* SSR 82-62, 1983 WL 31386 at *4). SSR 82-62 provides that, in decisions where an ALJ finds that the claimant has the capacity to engage in his or her past relevant work, the determination or decision must contain the following findings of fact:

1. A finding of fact as to the individual's RFC.
2. A finding of fact as to the physical and mental demands of the past job/occupation.
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

1983 WL 31386 at *4.

In this case, as discussed above, the ALJ made a finding of fact as to Ms. Flora's RFC assessment. (Admin. Tr. 15; Doc. 10-2 p. 16). The ALJ also concluded that "[t]he claimant is capable of performing past relevant work as a housekeeper, file clerk, and micro-electronics assembler," because this work did "not require the performance of work-related activities by the claimant's residual functional capacity." (Admin. Tr. 18; Doc. 10-2 p. 19). In reaching this determination, the ALJ explained that:

> The vocational expert credibly testified that the claimant has past relevant work as a housekeeper (light, unskilled, SVP 2), file clerk (light, semiskilled, SVP 3),

micro-electronic assembler (sedentary, semiskilled, SVP 3), and packager (medium, unskilled, SVP 2)

The vocational expert also testified that a hypothetical individual with the claimant's residual functional capacity would be able to perform the claimant's residual functional capacity as a housekeeper, file clerk, and micro-electronics assembler, as they were actually performed by the claimant and are customarily performed in the national economy. Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

(Admin. Tr. 18; Doc. 10-2 p. 19). Based on this discussion, the Court finds that, in addition to making findings of fact about Ms. Flora's RFC assessment, that the ALJ's assessment that VE Bierley's testimony was "credible" is reasonably construed as findings of fact regarding the demands of Ms. Flora's past relevant work, and Ms. Flora's ability to engage in such work. Accordingly, the Court finds that Ms. Flora's argument lacks merit.

## V. RECOMMENDATION

Based on the foregoing, it is recommended that the Commissioner's decision be **AFFIRMED**, and Georgann L. Flora's requests for relief should be **DENIED** as follows:

(1) Georgann L. Flora's request for remand or the award of benefits should be DENIED and the Acting Commissioner of Social Security's final decision denying Georgann L. Flora's application for disability insurance benefits under Title II of the Social Security Act should be AFFIRMED;

(2) Final Judgment should be issued in favor of the Acting Commissioner of Social Security and against Georgann L. Flora; and,

(3) The Clerk of Court should close this case.

Dated: May 1, 2017

s/ Karoline Mehalchick
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GEORGANN L. FLORA,

        Plaintiff

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security

        Defendant

CIVIL ACTION NO. 1:16-CV-00252

(CONNER, C.J.)
(MEHALCHICK, M.J.)

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **May 1, 2017**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: May 1, 2017

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**